UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

SONIA R. HARRISON,

        Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 1:21-CV-137 DRL-SLC

ORDER AND OPINION

Sonia R. Harrison appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits. Ms. Harrison requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Ms. Harrison's request for remand [ECF 1] and remands the Commissioner's decision.

BACKGROUND

Ms. Harrison suffers from a variety of physical and mental health impairments. Her severe impairments include obesity, major depressive disorder, anxiety, and attention deficit hyperactivity disorder [R. 23]. She also suffers from non-severe impairments of rheumatoid arthritis, cocaine use, tachycardia, kidney and bladder problems, and left shoulder and upper back pain [R. 23-24].

Ms. Harrison filed a Title II application for benefits on September 25, 2018, alleging disability beginning December 26, 2016 [R. 21]. Her application was denied initially on February 20, 2019, and again on reconsideration on June 5, 2019 [R. 94, 108]. Her claims were heard by an Administrative Law Judge (ALJ) in a telephonic hearing on May 15, 2020 [R. 21]. The hearing was held via telephone as a result of the extraordinary circumstances presented by the COVID-19 pandemic [*id.*]. In a June

2, 2020 decision, the ALJ denied Ms. Harrison's petition on the basis that she could not show that she was disabled as defined by the Social Security Act [R. 18-20, 33-34].

Ms. Harrison last met the insured status requirements of the Social Security Act on December 31, 2019 [R. 23]. The ALJ found that, through the date last insured, Ms. Harrison had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: she could never climb ladders, ropes, or scaffolds; she could not work with even moderate exposure to moving machinery or unprotected heights; she could balance "commensurate with performing the activities outlined herein" [R. 32]; she could perform work that could be learned in 30 days or less with simple, routine, tasks; and she could remain on task for two-hour increments and with occasional interactions with co-workers, supervisors, and the general public [*id.*]. The ALJ found that Ms. Harrison could not perform any past relevant work [*id.*], but she could perform a significant number of jobs in the national economy [R. 33]. This decision became final when the Appeals Council denied Ms. Harrison's request for review [R. 8].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the

ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Harrison challenges the ALJ's conclusion that she is not totally disabled. She argues five errors in the administrative decision: (1) the ALJ erred in finding her rheumatoid arthritis a non-severe impairment and mischaracterized the evidence of her rheumatoid arthritis affecting the RFC; (2) the ALJ failed to account for all her mental limitations in the RFC; (3) the ALJ erred in analyzing her subjective symptoms; (4) the ALJ failed to consider her obesity both in the RFC and in considering what jobs she could perform; and (5) the ALJ erred in rejecting all opinion evidence regarding Ms. Harrison's ability to stand or walk during a workday, creating an evidentiary gap.

The court starts with her rheumatoid arthritis. At step two of the analysis, an ALJ is required to determine if the plaintiff has a severe medically determinable physical or mental impairment, or a combination of impairments that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Should the ALJ find one of these prongs satisfied, the analysis proceeds further. *See*

3

*id.* "Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (emphasis in original). Any error at the step two analysis is harmless so long as one condition is found to be severe or if the combination of impairments is found to be severe, *see id.*, and the ALJ properly considered all of the claimant's "severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC," *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015).

Here, the ALJ found at step two that Ms. Harrison had several impairments that were severe under the regulation [R. 23]. Since the ALJ determined that Ms. Harrison had at least one severe impairment, she proceeded to the remaining steps of the evaluation process. *See Castile v. Astrue*, 617 F.3d 923, 926-927 (7th Cir. 2010). That said, though the ultimate finding that Ms. Harrison's rheumatoid arthritis is non-severe did not preclude the ALJ from proceeding to the remaining steps, the analysis of her rheumatoid arthritis must still be correct as it could impact the RFC determination. Now, the question becomes whether the ALJ properly considered Ms. Harrison's rheumatoid arthritis and her resulting limitations in the RFC determination.

When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. 20 C.F.R. § 404.1523; *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The ALJ found Ms. Harrison's rheumatoid arthritis to be non-severe at step two based on evidence in the medical record. The ALJ noted that, though Ms. Harrison had a positive blood test for rheumatoid factor and CCP (cyclic citrullinated peptide) antibodies during the period at issue, she

4

had not sought any treatment with a rheumatologist between her alleged onset date and June 2018 [R. 24]. The ALJ also noted that she showed good range of motion in her shoulders, knees, and hands, with no significant tender points, clubbing, cyanosis, or edema [R. 24]. The ALJ observed that Ms. Harrison had an elevated sedimentation rate in December 2018, but her sedimentation rate was normal in March 2017, October 2017, and in 2019 [R. 24]. The ALJ also relied on x-rays completed in June 2017, November 2017, and December 2019, all of which showed no signs of erosive or inflammatory changes consistent with rheumatoid arthritis [R. 24]. The ALJ found that, though Ms. Harrison's primary care provider noted generalized osteoarthritic changes, she did not exhibit any significant deficits in fine finger manipulation, grip strength, muscle strength, or range of motion [R. 24]. Finally, the ALJ noted that Ms. Harrison's rheumatologist's treatment notes from 2018-2019 indicated that she exhibited synovitis in only a few joints in her hands and fingers, showed no consistent significant swelling of her joints, and had no organ or system involvement with her rheumatoid arthritis [R. 24-25].

Ms. Harrison first asserts that the administrative decision failed to acknowledge that her positive CCP antibody test showed levels that her doctor described as "strongly" positive, indicating rheumatoid arthritis [R. 325]. A strong positive is indicated to be anything above 59, and Ms. Harrison's levels were noted to be at 250 and 300 [R. 325, 466]. However, as the Commissioner responds, a diagnosis alone does not establish functional limitations. *See Schmidt v. Barnhart,* 395 F.3d 737, 745 (7th Cir. 2005) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)). Rather, the record must establish functional limitations. *Id.* Thus, the issue hinges on whether Ms. Harrison has provided evidence that her rheumatoid arthritis causes functional limitations and whether the ALJ properly considered Ms. Harrison's rheumatoid arthritis and these limitations in determining the RFC.

Ms. Harrison argues that the ALJ mischaracterized the evidence in finding that she had good range of motion with limited synovitis and swelling. The ALJ specifically cites to a treatment note

5

from September 2019, which notes good range of motion in the shoulders, knees, and hands, but synovitis "in a few mcp and pip joints" [R. 546]. Ms. Harrison asserts that the ALJ ignored medical evidence showing a variety of symptoms consistent with rheumatoid arthritis, including consistent swelling of her elbow, generalized osteoarthritic changes to the joints, reports of moderate diffuse joint and muscle pain, swelling in her wrists, synovitis to the metacarpophalangeal (MCP) and proximal interphalangeal (PIP) joints, and evidence indicating that she could not bend her fingers enough to tie her shoes [ECF 18 at 12].

The administrative decision correctly noted that Ms. Harrison regularly retained full range of motion in her hands but seemed not to acknowledge how often Ms. Harrison exhibited swelling in her upper extremities. The ALJ noted that Ms. Harrison's self-reported symptoms of pain and stiffness in her joints, inability to hold a pen, and inability to grasp a cup were contradicted by evidence of good range of motion and a lack of evidence of significant deficits in finger manipulation, grip strength, or muscle strength [R. 24]; but, as discussed below, continued evidence of swelling in her fingers, elbows, and wrists would support, as a line of evidence, a claim that she struggled with fine finger manipulations and grasping. Though the ALJ correctly noted that Ms. Harrison retained good range of motion, the medical record indicated swelling consistent with her complaints of pain and struggles with fine motor skills and grasping, which should have been addressed. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

The ALJ acknowledged Ms. Harrison's swelling merely in passing, stating that she exhibited synovitis "in only a few joints in her hands and fingers" [R. 24]. This is the only swelling mentioned in the administrative decision in discussing Ms. Harrison's rheumatoid arthritis. Ms. Harrison presented with swelling in her upper extremities throughout the medical record. She repeatedly presented with swelling in her wrists and elbows, as well as synovitis across multiple joint types in her hands and fingers [R. 304, 325, 330, 335, 340, 413, 546, 549, 553]. The administrative decision never

6

seemed to address this regular swelling across her wrists, elbows, hands, and fingers. The decision instead impermissibly picked a finding of synovitis in a "few" joints but ignored the evidence of swelling in her elbows and wrists.

The administrative decision also stated that Ms. Harrison's rheumatologist, Dr. Kteleh, did not "regularly or consistently" indicate significant swelling in treatment notes from 2018 or 2019 [R. 25]. Though Dr. Kteleh did not expressly find "significant" swelling, he continued to note synovitis (inflammation or swelling of a joint's synovium) in her hands and fingers throughout 2018 and 2019 [R. 413, 546, 549, 553]. The ALJ does not indicate whether swelling must be large in scale or large in quantity to be "significant," but Dr. Kteleh continued to adjust medication and provide injections for active symptoms related to her rheumatoid arthritis, indicating she continued to suffer from symptoms and limitations [R. 413-14, 549]. The Commissioner argues that Ms. Harrison failed to argue specific functional limitations, but the ALJ acknowledged that Ms. Harrison testified to struggles with fine finger manipulation, grasping, and lifting [R. 24]. Her alleged limitations related to her rheumatoid arthritis, and the administrative decision erred in not considering all of her struggles with inflammation and pain, as supported by the medical record.

Ms. Harrison's continued swelling in her hands, wrists, and elbows is also corroborated by the consultative examiner's opinions. The consultative examiner opined that Ms. Harrison would be limited to lifting eight pounds and could not bend her fingers enough to tie her shoes [R. 428-29]. The consultative examiner said she needed a jar lid to be loose to be able to open it [R. 429]. The ALJ found that the consultative examiner noted no abnormal physical examination findings outside of obesity and high blood pressure, which she found to be consistent with the medical evidence, including no significant deficits in muscle strength, grip strength, reflexes, sensation, and fine finger manipulative ability [R. 29].

But this passed over the consultative examiner's findings, which showed that Ms. Harrison was unable to bend her fingers enough to tie her shoes and could only open jars if they were loose [R. 429]. Such findings are consistent with Ms. Harrison's synovitis in her joints and indicate at least some struggles with fine finger manipulative ability. These findings reflect functional limitations. An inability to bend her fingers enough to tie her shoes is an abnormal physical examination consistent with Ms. Harrison's complaints of pain and swelling in her fingers. The administrative decision failed to discuss these findings from the consultative examiner or consider how they were consistent with the swelling indicated in the medical record. Though other portions of the consultative examination were normal, the administrative decision could not rely on a subset of evidence while ignoring evidence of struggles consistent with Ms. Harrison's swelling. *See Denton*, 596 F.3d at 425 (an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding").

The administrative decision also dismissed Ms. Harrison's primary care physician's findings of generalized osteoarthritic changes because the physician did not indicate any specific functional limitations. That may not be problematic in the usual case; but there was evidence that Ms. Harrison exhibited functional limitations despite the primary care physician's silence on functional limitations. Ms. Harrison testified that on bad days she would struggle to grab a bottle or a cup, and she could not hold a pen [R. 65, 68]. These limitations were consistent with reports of swelling in the fingers and wrists, the consultative examiner's finding that she could not bend her fingers enough to tie her shoes, as well as the primary care physician's finding of generalized osteoarthritic changes [R. 429]. Ms. Harrison's primary care physician noted generalized osteoarthritic changes in multiple joints throughout her treatment in 2019 [R. 584, 588, 591]. These reports support Ms. Harrison's complaints of fatigue, joint pain, joint swelling, and weakness [R. 583, 587, 590]. Though Ms. Harrison's provider did not explicitly indicate functional limitations, his notes showed that both the primary care physician

8

and her rheumatologist were in communication and in agreement in searching for a pain management provider for Ms. Harrison, indicating both providers acknowledged that Ms. Harrison's pain and symptoms were not under control [*id.*]. The consistency among multiple providers who noted swelling in her wrists, elbows, hands, fingers, and generalized osteoarthritic changes in multiple joints supports a finding that Ms. Harrison was struggling with inflammation and pain due to her rheumatoid arthritis. This line of evidence needed to be addressed.

Finally, the ALJ relied on normal sedimentation levels to find that Ms. Harrison's rheumatoid arthritis was not severe [R. 24]. The selection and characterization of the evidence here prove troublesome [*id.*]. The administrative decision said Ms. Harrison's sedimentation rate was elevated in December 2018, but normal in March 2017, October 2017, and in 2019 [R. 24]. But Ms. Harrison's sedimentation rate in October 2017 was high, not normal [R. 383].[1] Ms. Harrison's sedimentation rate was also high in January 2020 [R. 693]. Though the January 2020 sedimentation rate is outside of Ms. Harrison's date last insured, it is the only lab in the medical record that tested for sedimentation rate after November 2019, and it occurred shortly enough after the date last insured to support Ms. Harrison's reports of fluctuating inflammation [R. 690-91, 693]. Similarly, both July and October 2016 showed high sedimentation rates [R. 359, 361]. Though both treatment notes are prior to the alleged onset date, they support Ms. Harrison's allegations that her inflammation and pain fluctuated during the relevant period with "ups and downs" [R. 67, 359, 361]. The administrative decision never explains why a fluctuating sedimentation rate, even during the relevant period, would dispose of a limitation finding.

Moreover, sedimentation rate is not considered a perfect indication for inflammation. Many factors may decrease sedimentation rate despite inflammation. *See* Samantha C Shapiro, *Biomarkers in*

---

[1] "ESR Bld Qn" is noted to be high on October 12, 2017, and ESR stands for erythrocyte sedimentation rate, also labeled as a "sed rate," or the sedimentation rate as noted by the ALJ. *See* https://www.mayoclinic.org/tests- procedures/sed-rate/about/pac-20384797.

*rheumatoid arthritis*, 13 Cureus (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8205440/ (last visited Feb 22, 2022). An "ESR [sedimentation rate] is not a specific marker of inflammation." *Id.* Both sedimentation rate and CRP levels (C-reactive protein test that measures inflammation) vary with age, sex, and race, and there is no standardized reference range for CRP values. *Id.* Though there is often a correlation between elevated sedimentation rate or CRP elevation and functional outcomes in patients with rheumatoid arthritis, sedimentation rate and CRP levels "are normal in about 40% of patients with [rheumatoid arthritis]." *Id.* Therefore, reliance on sedimentation rate to indicate whether Ms. Harrison is suffering from active inflammation or decreased functioning was in error. A normal sedimentation rate does not on its own indicate that a patient is not suffering from pain and inflammation due to rheumatoid arthritis. *Id.*

Instead, the ALJ should have considered the entire medical record when analyzing Ms. Harrison's rheumatoid arthritis. Ms. Harrison regularly reported pain and swelling in her hands, wrists, elbows, and shoulders, and the medical evidence indicated ongoing symptoms related to Ms. Harrison's rheumatoid arthritis, including generalized osteoarthritic changes in multiple joints and multiple trigger points [R. 327, 335, 413, 546, 549, 584, 588, 677-79, 591]. Ms. Harrison's pain and swelling resulted in multiple medication changes and pain injections to manage her symptoms [R. 413-14, 546-47]. Her regular medication changes indicated that her pain and symptoms were not under control, and that her doctors were working to find a solution.

The administrative decision erred by not fully considering Ms. Harrison's rheumatoid arthritis, which resulted in the exclusion of Ms. Harrison's rheumatoid arthritis and resulting limitations from the RFC determination. *See Denton*, 596 F.3d at 423 (citing *Golembiewski*, 322 F.3d at 918); *Rice v. Berryhill*, 2018 U.S. Dist. LEXIS 74554, 15 (N.D. Ill. May 2, 2018). The decision did not build an accurate and logical bridge, so remand is appropriate. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir.

2014). Of course, the court reaches no conclusion what finding should be made—that remains the ALJ's province—but this contrary line of evidence must be addressed in reaching a decision.

Ms. Harrison advances other arguments regarding her mental impairments, obesity, subjective symptoms, and the RFC determination. Because the administrative decision erred in analyzing Ms. Harrison's rheumatoid arthritis, the court need not address these arguments. Proper analysis of Ms. Harrison's rheumatoid arthritis and her symptoms and limitations related to her rheumatoid arthritis may alter both the RFC and the ALJ's analysis of Ms. Harrison's other impairments and subjective symptoms. On remand, the ALJ should properly analyze Ms. Harrison's rheumatoid arthritis and discuss its effects on her other impairments and the RFC.

## CONCLUSION

Accordingly, the court GRANTS Ms. Harrison's request for remand and REMANDS the Commissioner's decision.

SO ORDERED.

March 10, 2022                                                *s/ Damon R. Leichty*
                                                              Judge, United States District Court